# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

BERNARD WILSON,               )
                              )
    Plaintiff,            )
                              )
v.                            )    Case No. 2:17-cv-2182-TMP
                              )
ALORICA, Inc.,                )
                              )
    Defendant.            )
                              )

## **MEMORANDUM OPINION REGARDING ARBITRATION**

This matter is before the court on a motion to dismiss and to compel arbitration filed by the defendant, Alorica, Inc., on February 20, 2018, supported by evidence. (Doc. 9). Defendant sought and received permission to supplement the motion. (Docs. 10, 11). Defendant filed a supplemental affidavit with exhibits.[1] (Doc. 12). After seeking and receiving an extension of time, the plaintiff, Bernard Wilson, filed an opposition to the motion to compel arbitration (doc. 20), and the defendant filed a brief in reply (doc. 21). The parties have consented to the jurisdiction of the undersigned magistrate judge. (Doc. 15).

---

[1] Because the court has considered evidence outside the pleadings themselves, the court has treated the instant motion as a motion for summary judgment and has applied the appropriate summary judgment standards to the assessment of the evidenced. In particular, where genuine issues of material fact exist, the court has viewed the evidence favorably to the non-moving plaintiff.

## DISCUSSION

Plaintiff Bernard Wilson filed a complaint seeking damages and injunctive relief against his former employer, Alorica, Inc., asserting that Alorica deprived him of rights secured by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112(a) ("ADA"). The defendant filed a motion to dismiss the action and to compel arbitration, asserting that the plaintiff agreed to arbitrate any claims arising from or relating to his employment. In support of its motion, the defendant provided the affidavit of Susannah Lawler, Regional Senior Human Resources Manager for Alorica, in which she states that "[a]t the outset of his employment with Alorica, and as a condition of his continued employment, Wilson entered into a binding 'Agreement to Arbitrate.'" (Doc. 12, ¶ 6). Attached to her affidavit is the purported agreement, which states in pertinent part:

> In the interest of gaining the benefits of a speedy and impartial dispute-resolution procedure for any disputes which may arise between us concerning Your employment by the Company, You and the Company desire to submit any such disputes to binding arbitration as described below.
>
> NOW, THEREFORE, in consideration of the mutual promises and undertakings contained herein, the parties agree as follows:

All disputes, claims, or controversies arising out of or relating to your employment by the Company, the termination of your employment by the Company, and/or this Offer Letter, and any claims or disputes as to the scope and enforceability of this

arbitration agreement, shall be resolved exclusively by final and binding arbitration.
...

(Doc. 12, p. 7).[2]

Lawler asserts that "on October 2, 2015, Wilson, using his unique login ID and password, logged into Alorica's Employment Information System ("EIS")"; she further states that Wilson "electronically acknowledged its terms by clicking on a button at the bottom of the document." (Doc. 12, p. 4, ¶ 7). Lawler asserts that such electronic acknowledgment could only be performed by a person using Wilson's unique login ID and password. A copy of the internal record of Alorica that manifests the acknowledgment is attached to her affidavit, and reflects that the acknowledgment occurred at 8:41 a.m. on October 2, 2015. (Doc. 12, p. 10). Wilson has responded that he does not recall receiving or signing the agreement at issue and further argues that the records reflect that his acknowledgment was obtained less than one-tenth of one second after he opened the document. He asserts that, because he could not have spent more than one-tenth of one second looking at the document, he could not have reviewed, read, or agreed to the terms. (Docs. 20, 20-1). Plaintiff further argues that the agreement was not signed and

---

[2] The Agreement is provided in blank, with no date or signature, as a copy of the agreement that was provided to the plaintiff online.

that, even if he "reviewed" the document, he did not agree to its terms.  Finally, Wilson asserts that the language of the arbitration provision at issue is not broad enough to cover the statutory claims asserted in the complaint.

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* (1988), a party to a written agreement involving interstate commerce[3] and containing an arbitration clause has a right to petition a district court to issue an order compelling arbitration.  In Dunn Construction Co. v. Sugar Beach Condominium Assoc., the district court asserted that its "ultimate objective in reviewing a motion to compel arbitration is to ascertain if an arbitrable dispute exists between individuals or entities who may be compelled to arbitrate.  If arbitration is appropriate, it then is the arbitrator's responsibility to resolve the merits of the parties' contentions."  760 F. Supp. 1479, 1482 (S.D. Ala. 1991).

There is a strong national policy favoring arbitration of disputes.  Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984) (finding that "all doubts concerning the arbitrability of claims should be resolved in favor of arbitration"); see also   Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460

---

[3]     The parties in the instant case do not dispute that the contract at issue involves interstate commerce, and the court likewise finds that the interstate commerce requirement of the arbitration provision is met.   See Jenkins v. First American Cash Advance of Georgia, LLC, 400 F.3d 868, 874-75 (11th Cir. 2005).

U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). The FAA provides, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Further, the Supreme Court has stated that the "primary purpose [of the FAA is to ensure that] private agreements to arbitrate are enforced according to their terms." Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 479, 109 S. Ct. 1243, 103 L. Ed. 2d 488 (1989). The FAA was intended to "reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." Jenkins v. First America Cash Advance of Ga., LLC, 400 F.3d 868, 874 (11th Cir. 2005) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 11 S. Ct. 1647, 1651, 114 L. Ed. 2d 26 (1991)). The issues presented in the instant motion to compel arbitration are whether Wilson agreed to arbitrate his employment claims, and, if he did, whether the agreement encompasses his federal statutory rights provided under the ADA.

## A. Agreement to Arbitrate

The plaintiff first asserts that there was no binding contract or agreement because the arbitration provision was not signed or dated. Under the FAA, an agreement to arbitrate must be "a written provision." 9 U.S.C. § 2. However, there is no requirement that the agreement be signed by the parties. See Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1368-69 (11th Cir. 2005), and cases cited therein. Because the FAA does not impose any requirement that the agreement be signed, the requirements for enforceability are determined by the applicable state law governing contracts.[4] The first issue, then, is whether the act of clicking a button on a computer to "acknowledge" an electronically-provided agreement can constitute an agreement to enter into a contract under Alabama law.

As a threshold matter, it appears to be undisputed that Alabama adopted the Uniform Electronic Transactions Act in 2001. See Alabama Code § 8-1A-1 *et seq.* (1975). Section 8-1A-7 of the Act states:

> (a) A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.

---

[4] While State law governing contracts can be applied to invalidate an arbitration agreement, only generally applicable contract defenses, such as fraud or unconscionability, have force—not contract law that is specific to arbitration agreements and therefore contrary to the federal policy behind the FAA. See AT&T Mobility, LLC v. Conception, 563 U.S. 333, 339, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011).

(b) A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.

(c) If a law requires a record to be in writing, an electronic record satisfies the law.

(d) If a law requires a signature, an electronic signature satisfies the law.

Alabama Code § 8-1A-7 (1975).  Thus, under Alabama law, the mere lack of a "wet ink" signature is not a barrier to the formation of a contract or the legal efficacy of an electronic signature.

An electronic signature was at issue in <u>Tyus v. Virginia College</u>, Case No. 2:15-CV-211-WKW, 2015 WL 4068571 (M.D. Ala. July 1, 2015).   In <u>Tyus</u>, the arbitration agreement was not enforced, but the electronic nature of the signature was not deemed ineffective under Alabama law.  In <u>Tyus</u>, the plaintiff "unequivocally den[ied]" that she had executed the agreement, asserting that an "enrollment specialist" at the school had the student create a login and PIN, and then the administrator turned the computer screen away from the student and executed the agreements without showing the student the documents that she was completing on her behalf.  2015 WL 4068571, at *1.  The plaintiff in <u>Tyus</u> supported her

"unequivocal denial" with evidence from another student who described the same one-sided enrollment process. 2015 WL 4068571, at *2.

The Eleventh Circuit Court of Appeals has not addressed the sufficiency of an e-signature or acknowledgment in the realm of an agreement to arbitrate, but the First Circuit Court of Appeals has noted that such arbitration provisions may be enforceable so long as the employer can "satisfy [the] relatively light burden by producing evidence demonstrating that the employee had actual notice of the agreement." Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 555 (1st Cir. 2005). In Campbell, the appellate court noted that an e-mail agreement qualifies as a "written" agreement under the FAA because the Electronic Signatures in Global and National Commerce Act ("E-Sign Act"), 15 U.S.C. §§ 7001-7031), precludes "any flat rule that a contract to arbitrate is unenforceable" solely because it is in electronic form. 407 F.3d at 556. The court went on to hold that "[s]igning an acknowledgment or, in a more modern context, clicking a box on a computer screen, are acts associated with entering into contracts." 407 F.3d at 556. The contract in Campbell was ultimately deemed unenforceable because the employer failed to require any sort of an affirmative response, such as clicking on a box, that could be interpreted as notice or assent. 407 F.3d at 557. Without such an affirmative

acknowledgement, the court could not say an electronic signature of the agreement ever occurred.

Alorica has met its burden of proving the existence of an arbitration agreement with the plaintiff. It has produced the electronic record, showing that plaintiff's unique login and password were used to access and acknowledge the Agreement. Such an electronic version of the Agreement is sufficiently a "written" agreement to comply with the FAA. The plaintiff has not unequivocally denied that he executed the acknowledgment of the Agreement. While he contends he does not remember doing so, that is a far cry from explicitly denying that he did so, particularly in the light of the fact that his unique login and password were used. This vague assertion that he lacks a memory of executing the Agreement does not create a genuine issue of fact as to the formation of the Agreement. The plaintiff does not dispute that the arbitration agreement was available to him, and does not unequivocally dispute that he clicked the box acknowledging the agreement, although he does maintain that he does not recall having done so. The contents of the agreement were not hidden from him, as were the terms of the agreement in Tyus. And the employer in this case *did* require affirmation from the employee, unlike in Campbell. While Wilson argues that he did not read the agreement, as evidenced by the fraction of a second he spent on that page, he does not dispute that

he could have read the agreement had he chosen to do so. Under Alabama law, a party's failure to read a contract that is made available to him does not excuse his performance under the contract. See, e.g., Locklear Dodge City, Inc. v. Kimbrell, 703 So. 2d 303, 306 (Ala. 1997).[5] For all of these reasons, the court finds that the plaintiff entered into an agreement to arbitrate his claims relating to his employment with Alorica.

### B. Scope of the Arbitration Agreement

The parties agree that the arbitration provision requires the parties to arbitrate any claim relating to Wilson's employment with Alorica, but the plaintiff argues that claims under the ADA are not subject to arbitration. Where the parties have indisputably agreed to arbitrate some of their claims and the issue is the scope of that arbitration agreement, "doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." Granite Rock Co. v. Int'l Brotherhood of Teamsters, 561 U.S. 287, 298, 130 S. Ct. 2847 (2010). There exists a presumption of arbitrability "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

---

[5] The plaintiff further argues that the acknowledgment did not occur "at the outset" of his employment, as the Lawler affidavit indicates, but later. Whether he was made aware of the arbitration agreement and assented to it upon being hired, or at some time during his continued employment, however, does not change the enforceability of the provision.

AT&T Technologies, Inc., v. Communications Workers of Amer., 475 U.S. 643, 650, 106 S. Ct. 1415 (1986) (quoting Warrior & Gulf Navigation Co., 363 U.S. 574, 582-583, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)).

Arbitration clauses often refer to claims "relating to" the contract, or claims "arising out of" the contract, and courts consistently have construed the term "relating to" more broadly than the term "arising out of." See, e.g., AT&T Technologies, 475 U.S. at 650; Ex parte Discount Foods, Inc., 789 So. 2d 842 (Ala. 2001). In this case, the provision contains both phrases, encompassing all claims related to or arising out of the plaintiff's employment with Alorica. Moreover, the issue of the scope of the agreement is a matter for the arbitrator. Shea v. BBVA Compass Bancshares, Inc., Case No. 1:12-cv-23324-KMM, 2013 WL 869526, *4 (S.D. Fla. March 7, 2013).

To the extent that the plaintiff asserts federal statutory rights such as those created by the ADA cannot be subject to arbitration, that argument has been foreclosed by Supreme Court precedent. In Penn Plaza, LLC v. Pyett, 556 U.S. 247, 265-66, 129 S. Ct. 1456, 173 L. Ed. 2d 398 (2009), the Court determined that while "federal antidiscrimination rights may not be prospectively waived ... [t]he decision to resolve ADEA claims by way of arbitration instead of litigation does not waive the statutory right to be free from workplace age discrimination; it waives

only the right to seek relief from a court in the first instance." The same reasoning applies to statutory rights under the ADA. The sole case cited by the plaintiff, Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 119 S. Ct. 391, 142 L. Ed. 2d 361 (1998), applies only in the context of a collective bargaining agreement, so is inapposite here. In Wright, the court noted that the arbitration clause, which was included in the collective bargaining agreement, was required to meet a heightened standard of "clear and unmistakable" because it was the union's waiver of the rights of an individual member, and not that individual's own personal waiver. 525 U.S. at 80-81.

It has been noted that the liberal federal policy favoring arbitration applies "even when the claims at issue are federal statutory claims, unless the FAA's mandate has been overridden by a contrary congressional command." United States v. Int'l Fidelity Ins. Co., 232 F. Supp. 3d 1193, 1196 (11th Cir. 2017) (quoting CompuCredit Corp. v. Greenwood, 565 U.S. 95, 98, 132 S. Ct. 665, 181 L. Ed. 2d 586 (2012)). The plaintiff does not assert, and the court does not find, any contrary congressional command overriding the FAA's mandate to arbitrate in relation to ADA claims. Accordingly, the scope of the arbitration provision at issue here is due to be determined by the arbitrator and, to the extent that the court must define the scope, the court finds it sufficiently broad to encompass plaintiff's ADA claims.

**CONCLUSION**

Based upon the foregoing undisputed facts and legal conclusions, the motion to dismiss or, in the alternative, to compel arbitration is due to GRANTED. By separate Order the court will DISMISS this action and direct the plaintiff, if he wishes to pursue these claims, to initiate an arbitration in compliance with the Agreement.

DATED the 16th day of May, 2018.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE